UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                            Case No. 18-20220
                            HON. GERSHWIN A. DRAIN

vs.

DJUAN BARNES,

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE [#16]**

## I.   INTRODUCTION

On April 3, 2018, Defendant Djuan Barnes was charged with three counts of mail theft in violation of 18 U.S.C. § 1708. Presently before the Court is Defendant's Motion to Suppress Evidence, Dkt. No. 16. This matter is fully briefed and a hearing was held on August 22, 2018. the ,For the reasons that follow, the Court will deny the Defendant's Motion to Suppress Evidence.

## II.   FACTUAL BACKGROUND

In October 2017, the State investigated a series of mail thefts around Bloomfield Township, MichiganBloomfield Township. Over the course of the

1

investigation police determined the Defendant to be the primary suspect for these crimes. The State additionally investigated further mail thefts being conducted in a grey SUV in early 2018. After a period of surveillance, police recognized the Defendant driving a grey Dodge Journey SUV in the area where the mail was reportedly stolen, and saw him accessing numerous residences' mailboxes over several days. During their observation of the Defendant, police also identified that the Defendant was driving a stolen SUV and was residing in the Woodspring Suites hotel.

On February 12, 2018, police observed the grey SUV parked at a Walmart nearby Woodspring Suites.  a small amount of   Due to the numerous thefts witnessed by officers and Defendant's pattern of returning to the hotel after such sprees, Moschel concluded that additional stolen mail would be located in Defendant's hotel room.Shortly thereafter they identified the Defendant heading toward the SUV as he exited the store. The officers arrested him for possession of a stolen vehicle. Following the arrest,therefore  Officer Timothy Newsome of the Bloomfield Township Police Department (BTPD) went to the hotel, entered the Defendant's room to ensure no one was inside, and placed evidence tape on the front door.dconfirm

At the site of the arrest, the Defendant's girlfriend, Emily Clarke, asked to enter the hotel roomto  room to retrieve her personal property, as well as that of

2

infant child. BTPD Officer Edward Ryan escorted her back to the hotela at the hotel hotel clerkthe clerk room where he instructed her to place every item she wished to take with her on the bed and he took photographs to keep a record of the room's original contents.  Ryan Other than what he recorded in a written report concerning the items taken by Clark, about his entry into the room and he had no further involvement with Defendant's case. She also explained that if Defendant had returned that night, she would not have permitted him to stay in his room even though he had paid for the room through 11:00 a.m. they left the premises and Officer Ryan reapplied the evidence tape to the door.the following morning.

During the same day, BTPD Detective Jim Moschel called the hotel and spoke with manager Sarah O'Neil, who told him that the Defendant was renewing the room on a day to day basis. At this time O'Neil stated that the Defendant  eof the 13th had not yet renewed his room for the following day (February 13th). Without renewal of the room, the hotel's policy was to clean it out following the checkout time of 11 a.m. and to dispose of its contents.

On February 13, 2018, around 12:00 p.m., law enforcement returned to the hotel to confirm if the room had been renewed. O'Neil said that the room had not been renewedthe  by the Defendant and that the hotel was preparing to remove all property inside to dispose of it. Officers then officers asked O'Neil if they could search the room before the property was removed and she said that they could,

escorting them to the room. Inside, officers on the scene found numerous pieces of mail that were not addressed to the Defendant scattered in various places throughout plain sight. There were also checkbooks, bank statements, financial documents, insurance documents, and other papers that were not addressed to the Defendant. Additionally, some of the mail and documents found in the room were addressed to parties that had previously reported their mail stolen earlier in the investigation. Officers seized these items, along with a laptop and portable hard drive.

II. **LAW AND ANALYSIS** searched ,and other officers  Newsome.  the Sixth Circuit, as well as other circuits have repeatedly held that; *see also United States v. Parizo*, 514 F.2d 52, (2d Cir. 1974) ("[W]hen the term of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room."); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970) ("When the rental period has elapsed, the guest has completely lost his right to use the room and any privacy associated with it.").

III.

IV.      The Court notes that in support of his motion, Defendant relies on authority that is factually dissimilar from the circumstances herein. Defendant's cases do not involve expiration of the rental period or termination of occupancy in connection with a hotel room rental, thus they

have no relevance to the legal issue before this Court. *See United States v. Eden*, 190 F. App'x 416 (6th Cir. Jun. 22, 2006) (determining that the defendant had not abandoned her privacy interest in a suitcase located in the trunk of a rental car); *United States v. Basinski*, 226 F.3d 829 (7th Cir. 2000) (affirming suppression of evidence seized from a suitcase that defendant's friend was storing in a barn); *see Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 855 (6th Cir. 2012) (entry into a home without a warrant or consent); *United States v. Chamblis*, 425 F. Supp. 1330, 1335 (E.D. Mich. 1977) (finding officer had no probable cause for further detention which caused the defendant to flee and discard heroin); *United States v. Eastman*, 645 F. App'x 476, 479 (6th Cir. May 18, 2016) (finding that the defendant had "disclaimed any connection" to the hotel room where he had been apprehended, thus he had no expectation of privacy in the room). In the instant casearguably took steps to take possession of, and terminate Defendant's privacy interests when O'Neil performed the "lock-out" procedure on the evening of February 12, 2018. She testified that at that point no one could access the room and that had Defendant returned to the hotel, she would not have allowed him to remain through the duration of his rental period.

In *Allen*, the defendant paid for "one night's lodging, plus a $20.00 deposit for any telephone charges he might incur." *Allen*, 106 F.3d at 697. The next day, the defendant paid for an additional night, but failed to make a deposit for potential telephone charges. *Id.* That afternoon, a motel clerk realized that the defendant's phone charges had decreased his credit balance to an amount insufficient to pay for the additional night's stay. *Id.* The clerk phoned the defendant, and he indicated he would pay the outstanding amount shortly. *Id.* An hour went by with no payment so the clerk again called the defendant, however he received no answer. *Id.* The motel manager was then informed of the situation. *Id.*

The manager went to the defendant's room and knocked on the door, but there was no answer. *Id.* The manager believed that the defendant had left without paying so she entered his room to verify her suspicions. *Id.* When she entered the room, she discovered a large amount of marijuana. *Id.* She left the room and engaged a deadbolt lock that only she could open. *Id.* She contacted police who searched the room. *Id.* The *Allen* defendant was charged with various drug trafficking charges and moved to suppress the evidence, but the district court declined to suppress the evidence. *Id.* at 698.

On appeal, the Sixth Circuit rejected the *Allen* defendant's assertion that his motel room was subjected to an unconstitutional search. *Id.* at 699. The *Allen* court held that "[u]pon learning that Allen was keeping contraband with the motel,

6

the motel manager locked Allen out of his room" thereby "divest[ing] Allen of his status as an occupant of the room, and concomitantly terminat[ing] his privacy interests in its contents." *Id.* The *Allen* court further held that:

> Once the manager, through private action, took possession of the motel room, Allen could no longer assert a legitimate privacy interest in its contents. The manager's consent to the officers' search of the room was all that was required.

*Id.* Additionally, the hotel manager's termination of the defendant's rental period was lawful, a requirement for valid consent. *Id.* The *Allen* court relied on the fact that the defendant used the room for illegal activities, as well as failed to pay the room rent when due, despite the clerk's request that he pay the outstanding amount. *Id.*

Here, O'Neil took possession of Defendant's hotel room when she performed the "lock-out" procedure. She did so because she believed that Defendant had violated hotel policy requiring that he abide by local, state and federal laws. Yet, it remains an open question whether O'Neil lawfully terminated Defendant's rental period at this point. She testified that she had no details concerning his arrest. As such, she did not know whether his arrest was for conduct that occurred prior to his stay. Likewise, she did not know whether he was conducting illegal activities and using the hotel in furtherance of such activities. Courts have held that termination under such circumstances generally entails using the hotel room to facilitate illicit activity. *See id.* (concluding that tenancy was

7

properly terminated because the defendant was storing illegal drugs on the premises); *Spicer*, 549 F. App'x at 376 (holding that "[a] hotel may lawfully terminate a guest's occupancy for unauthorized activity, including possession of illegal drugs."), *see also United States v. Lanier*, 636 F.3d 228, 233 (6th Cir. 2011) (concluding a hotel was "eminently reasonable" to terminate occupancy when it "discovers the guest has been using the room to peddle drugs.").

Because O'Neil was without sufficient information concerning the facts supporting Defendant's arrest, the Court cannot conclude as a matter of law that Defendant's privacy interests were lawfully terminated on the evening of February 12, 2018. *See United States v. Bass*, 41 F. App'x 735, 737-38 (6th Cir. Jun. 24, 2002) (concluding that "[a]lthough the hotel manager testified that he personally considered [the defendant] evicted once he had been arrested, the manager's personal beliefs have no legal import."); *see also Stoner*, 376 U.S. at 490 (noting that the "constitutional protection against unreasonable searches and seizures . . . would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel."). However, because there is a separate and lawful reason for terminating his occupancy—failure to pay rent past the 11:00 a.m. checkout time on February 13, 2018—the Court finds no constitutional infirmity with respect to the search at issue herein.

Defendant of course maintains that he cannot be held to have relinquished his expectation of privacy for failing to pay rent for another night because he had been arrested and could not renew his room.  Yet, Defendant again ignores well settled authority that when an individual is arrested and, because of that arrest, the individual is unable to renew his rental period, the individual still relinquishes an expectation of privacy in the room and the contents therein.  *See Huffhines*, 967 F.2d at 318-19.  In *Huffhines*, the defendant was arrested after providing a false name to a police officer.  *Id.* at 316.  At the time of his arrest, the defendant had lawfully rented a hotel room, and was due to check out by noon.  *Id*.  The police went to the hotel after the checkout period without a search warrant and hotel management gave the officers permission to search the room.  *Id*.  The police found two plastic bags containing cocaine during the search.  *Id*.

The *Huffhines* court rejected the defendant's claim that "he continued to have an expectation of privacy in the room after the rental period expired because his arrest prevented him from returning to the motel to renew the rental agreement."  *Id.* at 318.  The court held that "it was [the defendant]'s own conduct in giving a false name . . . that precipitated his arrest and prevented" his return to renew his room rental.  *Id*.  As such, the defendant could not "rely on his own misconduct to extend the period of his expectation of privacy in the motel room. *Id*. (citing *Croft*, 429 F.2d at 887; *United States v. Reyes*, 908 F.2d 281, 285 (8th

Cir. 1990)); *see also United States v. Gonzales*, No. 94-1116, 1995 U.S. App. LEXIS 2480, \*7 (6th Cir. Feb. 7, 1995) (holding that the fact the defendant had been arrested and thereby prevented from renewing his room rental was of no significance) (citing *United States v. Ramirez*, 810 F.2d 1338, 1341 n.3 (5th Cir. 1987); *United States v. Reyes*, 908 F.2d 281, 285 (8th Cir. 1990)).

The facts here demonstrate that Defendant lost his privacy interest in his room and its contents when he failed to renew his room for an additional night. He cannot rely on his own misconduct—driving a stolen vehicle—which lead to his arrest and prevented the timely renewal of his room rental. Additionally, the hotel had taken affirmative steps to take possession of his room at the point Moschel and the other officers arrived after 11:00 a.m. on February 13, 2018. O'Neil testified that once a guest fails to renew his rental period by checkout time at 11:00 a.m., his key card is deactivated and he no longer may access the room. Moreover, when Moschel approached O'Neil, she confirmed that Defendant had not renewed his room and that staff was preparing to discard his personal property left in the room so that it could be rented to another guest. O'Neil, as the hotel's General Manager, had authority to consent to the search of his room. *Spicer*, 549 F. App'x at 376 ("Once the guest's tenancy is terminated, a hotel employee with hotel given-authority may consent to a search of the guest's former room.") (citing *Allen*, 106 F.3d at 699).

10

This case is unlike *Bass, supra*, where the Sixth Circuit found that "[i]t was objectively unreasonable . . . for the police officers to rely on the hotel manager's consent in searching a tenant's room."  41 F. App'x at 738.  In *Bass*, the hotel valet noticed drugs and a weapon in the defendant's vehicle.  *Id*. at 736.  When the defendant left the hotel, the night security guard contacted police.  *Id*.  Upon his return, officers arrested the defendant for carrying a concealed weapon.  *Id*.  The hotel manager asked the officers to check that the defendant's room was safe.  *Id*.  Despite having no warrant, the officers agreed to the manager's request.  *Id*.  The officers found no individuals in the room, but did find a duffel bag containing papers which lead to the defendant's indictment for fraud.  *Id*. at 736-37.

The *Bass* court concluded that it was objectively unreasonable for the officers to rely on the hotel manager's consent to search the room because there was no "evidence that the hotel management had decided to evict him at the time of the search."  *Id.* at 737.  Relying on the fact that the manager never told the officers he had evicted the defendant from the hotel, "the police officers could not reasonably rely on the hotel manager's consent in entering [the defendant]'s hotel room."  *Id*. at 738.  Here, it was objectively reasonable for Moschel to rely on O'Neil's statement that Defendant had not renewed his room rental and hotel policy required that his room key be deactivated.  She further indicated that the staff was preparing to discard his personal belongings.  This was sufficient for the

police to reasonably conclude that Defendant's occupancy had been terminated for failure to timely renew, that the hotel had taken steps to repossess the room and O'Neil had the authority to consent to the search.

In any event, the officers would have inevitably discovered and seized Defendant's personal belongings even if Defendant's occupancy had not been terminated and O'Neil lacked authority to consent to a search of his room. O'Neil testified that once a guest failed to pay by the checkout time, the hotel discarded all of the personal belongings in the dumpster behind the hotel. "[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered." *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). Because the Government has shown they would have inevitably discovered the stolen mail and other documents once they were discarded by the hotel, the exclusionary rule is inapplicable to the circumstances before the Court.

## V.    Searches

### 1.    Officer Newsome's Search

As to the February 12, 2018 searches, the Court likewise finds no justification for suppressing the evidence seized the following day based upon the

*de minimus* searches conducted by Newsome and Ryan.  The exclusionary rule only "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure."  *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008).  Officer Newsome's limited entry into the room immediately following Defendant's arrest had no impact on any subsequent police action.  Due to their surveillance of Defendant during the preceding days, Moschel and his team had probable cause to believe that additional evidence of mail fraud was located in Defendant's hotel room.  Officer Newsome conducted a roughly twenty-second search to ensure that there were no individuals present who could destroy that evidence.  He did not search in any drawers or any spaces where it would be impossible for a person to hide.  Such a search is lawful as a limited protective sweep.  *See United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995) (concluding protective sweep of hotel room lawful following defendant's arrest in parking lot of hotel).

Further, Newsome testified that he had no specific recollection of the contents of the room and, in particular, the credenza, which contained some of the stolen mail stacked on top of it.  Newsome also testified that he did not speak with any other officers about his search of the room.  Suppression of evidence based on this limited, protective sweep that had no derivative impact on any subsequent police action is unwarranted.

13

### 2.      Officer Ryan's Search

Similarly, Officer Ryan's later search on February 12, 2018 had no impact on any subsequent police action. Ryan likewise testified that he had no specific recollection of the contents of the room.  He did not conduct a search of the room and did not discuss what he observed in the room to any other officers in the department.  It was constitutionally permissible for Ryan to enter the room along with Clarke when she returned to retrieve some personal belongings. *See Illinois v. McArthur*, 531 U.S. 326, 332 (2001) (holding that when law enforcement has probable cause to believe that a place contains evidence of a crime, and reason to fear that allowing a person entry to that place would lead to the destruction of evidence, they may accompany the person who goes inside to get her belongings).

Additionally, this was Ryan's only involvement with Defendant's case and his report solely identified the items removed by Clarke.  His report does not mention any observation of mail in the room, or any of the other documents seized during the February 13, 2018 search.  Lastly, the Government does not intend to introduce Ryan's photographs which depict the personal items Clarke took from the room.  There is likewise no constitutional infirmity with respect to Ryan's search during the evening of February 12, 2018.

The Defendant makes three main claims in support of his motion. First, that the Fourth Amendment prohibits warrantless searches of a hotel room and that the

14

burden to justify a warrantless entry falls on the Government. Next, Defendant asserts that law enforcement violated the Fourth Amendment by entering the room with Clarke and collecting evidence. Finally, he maintains that law enforcement violated the Fourth Amendment by searching the room without a warrant the following day on false grounds that the property had been abandoned.

While the police ultimately violated the Defendant's Fourth Amendment rights in their search of his hotel room, they acted on a good faith basis in the apparent consent provided by the hotel manager and regardless the evidence would still be admissible under inevitable discovery. The Fourth Amendment provides that "the rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., Amend. IV. These protections also extend to hotel rooms. *United States v. Riley*, 858 F.3d 1012, 1018 (6th Cir. 2017). However, once an individual's rental period expires, his legitimate expectation of privacy inside the room and its contents is eliminated. *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997). There are three separate potential violations that must be viewed in combination to determine if an illegal search has taken place: 1) Officer Newsome's entrance to secure the premises, 2) Officer Ryan's escort of Clarke into the room, and 3) the search following the rental expiration.

### A. Officer Newsome's entry was valid but presents issues later in the investigation

The initial entry by Officer Newsome to secure the premises in itself is valid but raises several issues. To defend this action, the Government cites *Illinois v. McArthur*. In *McArthur*, police were told that a man had drugs in his trailer and restricted access to it until a warrant could be procured to search the premises. *Illinois v. McArthur*, 531 U.S. 326, 329 (2001). The Supreme Court held that the warrantless seizure in this case was not 'per se' unreasonable because of the exigent circumstances present and that the restraint to the property was tailored and avoided significant intrusion. *Id*. at 331. In order to determine this, the *McArthur* court considered four circumstances that must be evaluated in combination. *Id*. These include probable cause to believe the restricted area contains evidence of a crime, that law enforcement had good reason to fear the evidence inside would be destroyed without restriction, that they made reasonable efforts to reconcile their needs with the demands of personal privacy, and that they imposed the restraint for a limited period of time. *Id*. at 332.

Officer Newsome's actions in securing the room independent from the remainder of the investigation are valid under probable cause and a reasonable fear evidence could be destroyed without restriction. Additionally, his entrance into the room would be considered as a valid 'limited protective sweep' to ensure

there were no others in the room prior to securing the door. *United States v. Biggs*, 70 F.3d 913, 915 (6th Cir. 1995). Officer Newsome's entry was brief and its purpose was purely contained to making sure there was no one present inside, thereby falling within the scope of a protective sweep.

However, the officers failed to balance the individual privacy concerns with law enforcement needs to determine if the intrusion was within reason. In *McArthur*, police were found to make reasonable efforts to reconcile their needs with the demands of personal privacy ensuring that "they left his home and belongings intact until a neutral magistrate finding probable cause issued a warrant." *McArthur*, 531 U.S. at 332. Additionally, they imposed a restraint on the property only for "no longer then reasonably necessary for the police, acting with diligence, to obtain a warrant." *Id*. With regard to the hotel room search, there is no record that law enforcement ever attempted to obtain a search warrant or involve any neutral party. As well, their restriction of access to the Defendant's hotel room for approximately 18 hours, resulting in the rental expiration, exceeds the reasonably necessary period. While *McArthur*, when viewed in the context of evaluating the investigation in its entirety, would suggest a Fourth Amendment violation, Officer Newsome's entry into the room in and of itself is valid.

## B. Officer Ryan's entry was lawful due to Clarke's consent and no derivative evidence

The entry by Officer Ryan is within the scope of reasonable action. *McArthur* recognized that law enforcement may also accompany a person who goes inside of a temporarily restricted area to retrieve their belongings. *Id*. The officer's actions in this case extended beyond the *de minimis* range explained in *McArthur* and expanded in *Andrews* through his entry into the room and his photography of multiple items. *Andrews v. Hickman Count, Tenn*., 700 F.3d 845, 855 (6th Cir. 2012). In *Andrews*, a police officer entered a home without warrant when dispatched to accompany a Department of Children's Services complaint investigation. *Id*. at 850-51. One of the claims made by the Government was that the officer's entry was *de minimis*, however this was denied as the officer fully entering the home was seen as an extension beyond the *de minimis* range. *Id*. at 855. Despite the factual similarities between *Andrews* and this case, the point is moot on two grounds.

The first is that Clarke consented to being accompanied into the room to retrieve her belongings. As a person who had the apparent consent of the Defendant to reside in the room as his live-in-girlfriend, she in turn had the ability to consent to police accompaniment into the room once it was secured. *United States v. Penney*, 576 F.3d 297, 308 (6th Cir. 2009). Also, there is no violation of the fruit of the poisonous tree doctrine in this case as there was no derivatively obtained evidence from this encounter. *United States v. Pearce*, 531 F.3d 374, 381

(6th Cir. 2008). This is because none of the items, pictures, or any other impact from entry into the room factored into the following day's search as Officer Ryan played no other role in the investigation outside of this event. Therefore, Officer Ryan's accompaniment of Clarke back to the hotel room did not violate the Fourth Amendment.

### C. The evidence seized during the warrantless search on February 13 should still be admissible due to the hotel manager's apparent authority to consent to the search.

The evidence recovered during the February 13 search is admissible because law enforcement acted upon the apparent authority of the hotel manager to consent to the search. For the Defendant's property to become eligible for search without consent it would need to be deemed abandoned. *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000). In order for the Government to demonstrate abandonment it must establish "sufficient subjective intent" to abandon through voluntary words or conduct that would lead a reasonable person to believe the Defendant relinquished his property interests in the searched location. *United States v. Eden*, 190 F. App'x 416 (6th Cir. 2006). The Defendant did not voluntarily relinquish his privacy interest in this case as he was detained at the time of the search. Furthermore, as the Supreme Court outlined in *Rakas*; "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

This view was expanded upon in *United States v. Cooper* from the Eleventh Circuit which held that a renter retains his Fourth Amendment property rights to belongings contained in a rental past its expiration so long as the lessor has not begun steps to repossess the property. *United States v. Cooper*, 133 F.3d 1394, 1401-02 (11th Cir. 1998). Therefore, even if the search occurred after the expiration of the room rental, the hotel had not yet taken steps to clean or retake full possession of the room in any way, thereby creating a potential privacy violation in the search.

This potential privacy violation however is irrelevant and the search is lawful because the hotel manager O'Neil had apparent authority to consent to the search. As seen in *United States v. Morgan*, "a search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search." *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006). In *Morgan*, the wife of a defendant contacted police to search her husband's computer as she believed he was viewing child pornography. *Id*. at 662. On the grounds that the computer was in a common area and that the wife used it, the Court found it was reasonable for officers to assume that the wife had apparent authority to consent to a search of its contents. *Id*. at 663-64.

Here, O'Neil told police that the room rental had expired and that she was preparing to have staff clean it out for new guests, providing a reasonable basis for them to conclude that the manager was in the process of reclaiming the property, thereby making the search lawful. Furthermore, while the Defendant suggests that there is no proof the manager ever provided definitive express consent to the search, she accompanied the officers to the room, which is a clear physical representation of consent. The burden would then be on the Defendant to produce evidence to suggest O'Neil did not consent to the search, which he has failed to do. Therefore, O'Neil had apparent authority to consent to the search, she accompanied officers to the Defendant's room, and the officers acted upon a good faith basis in their perceived authorization to search. Based on this assessment, the February 13 search should be seen as valid and the evidence seized therefore should be admitted.

## D. Even if the February 13 search was unlawful, the evidence obtained from the search was inevitably discoverable

In spite of these violations, however, the evidence should still be admissible due to the inevitable discovery exception to the exclusionary rule. As cited in *United States v. Kennedy* (via *Nix v. Williams*), "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has

so little basis that the evidence should be received." *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). There are two scenarios that would have occurred if law enforcement did not commence in their unlawful search following the Defendant's arrest. After securing the room they could have applied for a warrant, received it lawfully based on the evidence obtained from the Defendant's vehicle, and commenced a lawful search of the hotel room.

Moreover, if they did not pursue a search warrant, with the Defendant in custody his room rental would have inevitably expired on February 13, and following this, hotel policy is to clean out the room and dispose of its contents which in turn would have given police legal access to the evidence. While the Defendant attempts to suggest via *Cooper* that "a simple phone call" to retain the room could have staved off inevitable discovery, there is no evidence he attempted to do so, eliminating that position as a plausible outcome. *United States v. Cooper*, 133 F.3d 1394, 1402 (11th Cir. 1998). Therefore, despite violations by law enforcement in this case, the evidence should be deemed inevitably discoverable and thereby exempt from the exclusionary rule prescribed by the Fourth Amendment.

## VI.    RECOMMENDATION

SO ORDERED.

Dated:  September 7, 2018                          /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge


### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 7, 2018, by electronic and/or ordinary mail.
                          /s/ Tanya Bankston
Deputy ClerkAccordingly, for the foregoing reasons, it is recommended that

the Court DENY Defendant's Motion to Suppress Evidence from a warrantless

search.